762 JANUARY, 2022 340 Conn. 762

Not Another Power Plant *v.* Connecticut Siting Council

NOT ANOTHER POWER PLANT *v.* CONNECTICUT
SITING COUNCIL ET AL.
(SC 20464)

Robinson, C. J., and McDonald, D'Auria,
Mullins, Kahn and Ecker, Js.

*Syllabus*

Pursuant to statute (§ 16-50k (a)), "no person shall . . . commence the
construction or supplying of a facility . . . that may, as determined by
the [Connecticut Siting] [C]ouncil, have a substantial adverse environ-
mental effect in the state without having first obtained a certificate of
environmental compatibility and public need . . . issued with respect
to such facility or modification by the council."

Pursuant further to statute (§ 16-50p (a) (3) (B)), "[t]he council shall file,
with its order, an opinion stating in full its reasons for the decision.
The council shall not grant a certificate, either as proposed or as modified
by the council, unless it shall find and determine . . . [t]he nature of
the probable environmental impact of the facility alone and cumulatively
with other facilities, including a specification of every significant adverse
effect . . . ."

The plaintiff, a nonprofit association formed to promote environmental
conservation in the town of Killingly, appealed to the trial court from
the decision of the defendant council, which approved the application of
the defendant energy company, N Co., for a certificate of environmental
compatibility and public need in connection with an electric generating
facility that N Co. sought to construct in the town. The plaintiff had
intervened in the administrative proceeding pursuant to statute (§ 22a-
19 (a) (1)), claiming that approval of the facility would result in the
unreasonable pollution and impairment of the public trust in the environ-
ment. According to N Co.'s application, the facility would be supplied
with natural gas by E Co., which owns a distribution pipeline that extends
from a mainline to the site of the proposed facility. For the facility to
function, however, E Co. would need to replace approximately two
miles of its existing distribution pipeline with an upgraded pipeline
that would cross or abut wetlands, a river, and certain preserved or
undeveloped lands. The plaintiff moved to dismiss or to stay N Co.'s
application, claiming that the council was required to consider the envi-
ronmental impact of the upgraded pipeline when weighing the public
benefit of the facility against the harm that it would cause to the environ-
ment under § 16-50p (c) (1) of the Public Utility Environmental Standards
Act (act) and that N Co. had neither obtained a commitment as to
the design of the upgraded pipeline from E Co. nor fully assessed the
environmental impact the upgraded pipeline would have. The council
denied the plaintiff's motion and, after hearings, approved N Co.'s appli-

cation for a certificate, without ever considering the potential environ-
mental effects of the upgraded pipeline. The council found that the
facility was necessary for the reliability of the electric power supply of
the state and, therefore, would be a public benefit, and that the adverse
impacts of the facility were not disproportionate, either alone or cumula-
tively, when compared to the public benefit. On appeal to the trial court,
the plaintiff claimed that the council had improperly segmented the
project into two components, namely, N Co.'s electric generating facility
and E Co.'s upgraded pipeline, to avoid a comprehensive review of the
project's overall environmental impact. After rejecting N Co.'s special
defense that the plaintiff lacked standing to appeal, the trial court con-
cluded that, although the facility was intertwined with the upgraded
pipeline insofar as the facility, as planned, could not operate without
it, the council reasonably decided to consider them separately because,
under the act, electric generating facilities and fuel transmission lines
are separate facilities to be considered under different provisions and
submitted by two unrelated parties. The court also observed that E Co.
would need to apply for a certificate of environmental compatibility
and public need under § 16-50k (a) to construct the upgraded pipeline
and stated that it would consider the pipeline's environmental impact
at that time. Further, the trial court concluded that the plaintiff had
neither pointed to any environmental concerns with the facility itself
nor claimed that combining the environmental impact of the facility with
that of the upgraded pipeline would result in an increased environmental
impact. Accordingly, the trial court rejected the plaintiff's improper
segmentation claim, concluded that the plaintiff failed to establish that
the council had improperly approved N Co.'s application, and rendered
judgment dismissing the plaintiff's administrative appeal. On the plain-
tiff's appeal, *held*:

1. The trial court correctly concluded that the plaintiff had standing to
   appeal under § 22a-19 (a) (1) from the council's decision, the plaintiff
   having asserted a colorable claim of potential impairment of or destruc-
   tion to the environment by alleging in its complaint that the council's
   improper segmentation of the project into two separate components,
   in order to avoid a comprehensive review of the project's overall impact,
   would result in a substantial likelihood of such impairment or
   destruction.
2. The plaintiff could not prevail on its claim that the trial court incorrectly
   determined that the council's failure to consider the environmental
   impact of E Co.'s future, upgraded pipeline when weighing the public
   benefit of the electric generating facility against the harm that it would
   cause to the environment was not arbitrary and capricious:
   a. Contrary to the council's claim, the plaintiff did not waive its claim
   regarding the council's refusal to consider the environmental impact of
   the upgraded pipeline by failing to challenge the council's finding that
   the facility would provide a public benefit in the trial court; the very

reason that the plaintiff argued that the council was required to consider the impact of the upgraded pipeline was that, if it had done so, it might have concluded that the adverse environmental impact of the facility and the upgraded pipeline together outweighed the public benefit, and the plaintiff's counsel expressly raised that argument in the trial court.

b. The council was not prohibited under the act from considering the environmental impact of E Co.'s future, upgraded pipeline when considering N Co.'s application for a certificate for the electric generating facility; the language of § 16-50p (a) (3) (B) specifies the environmental factors that the council must consider and address in its written decision, a review of the statutory scheme revealed that the act does not specify matters that the council may not consider when balancing the public benefit of the proposed facility against the harm it would cause to the environment, and this court could perceive no reason why the legislature would have wanted to prohibit the council from considering any information that would be relevant to this balancing process; accordingly, when determining whether a facility under review will have a public benefit, the council is authorized to consider the facts that that facility is interdependent with another facility that does not yet exist and that there is a significant likelihood that the nonexistent facility ultimately may not be approved because its harmful effects, considered together with the harmful effects of the facility under review, could outweigh the public benefit of the facilities considered as a whole; moreover, although the council cannot, as a practical matter consider the actual environmental impact of a future project, the nature and scope of which has yet to be determined, the general notion that the council should weigh the overall benefits that interdependent projects will provide to the public against their overall impact on the environment was supported by both common sense and federal case law disfavoring the use of improper segmentation.

c. The council's decision not to consider the potential environmental impact of the upgraded pipeline during the proceedings on N Co.'s application for a certificate for the facility was not arbitrary and capricious: although this court disagreed with the trial court's determination that the plaintiff did not claim that combining the environmental impact of the electric generating facility with that of the upgraded pipeline would result in an increased environmental impact, the plaintiff having very clearly claimed that the sum of their effects would be greater than the effect of either project considered alone and that the cumulative effect should be weighed against the public benefit, the trial court correctly determined that the council did not improperly segment the project on the grounds that the environmental impact of the upgraded pipeline would necessarily be considered by the council in a future proceeding and that the risk and cost of failing to obtain approval of the upgraded pipeline would be borne solely by N Co., which would have to post a decommissioning bond and to develop a decommissioning plan for

340 Conn. 762 JANUARY, 2022 765

Not Another Power Plant *v.* Connecticut Siting Council

restoring the facility site if the council did not ultimately approve the upgraded pipeline.

3. The plaintiff could not prevail on its unpreserved claim that the trial court based its conclusion that the council and N Co. did not improperly segment the project on the incorrect assumption that, under § 16-50k (a), E Co. would be required to apply for a certificate of environmental compatibility and public need in connection with the upgraded pipeline; to the extent that the plaintiff claimed that the trial court failed to recognize that E Co. could evade the council's review by seeking review of the pipeline by another state or federal agency, the plaintiff made no such claim in the trial court, where the plaintiff's counsel expressly stated that she had every reason to believe that the council would thoroughly evaluate the environmental impacts of the pipeline and that her only concern was that the council would not be evaluating the cumulative impact of the facility and the upgraded pipeline, and, accordingly, any such claim was waived; moreover, any error with respect to the trial court's failure to recognize that, under § 16-50k (a), E Co. could file a petition for a declaratory ruling from the council that the upgraded pipeline would not have a substantial adverse environmental effect, rather than applying for a certificate of environmental compatibility and public need, was harmless, as the statutory and regulatory provisions governing petitions for a declaratory ruling from the council were not facially inadequate to ensure that the council would fully and fairly consider the issue, and any claim that the council would not do so in the present case was not ripe for review.

(*One justice concurring separately*; *two justices concurring in part and dissenting in part in one opinion*)

Argued September 10, 2020—officially released September 28, 2021*

*Procedural History*

Appeal from the decision of the named defendant approving the application by the defendant NTE Connecticut, LLC, for the construction of an electric generating facility, brought to the Superior Court in the judicial district of New Britain and tried to the court, *Cordani, J.*; judgment dismissing the appeal, from which the plaintiff appealed. *Affirmed.*

*Mary Mintel Miller*, for the appellant (plaintiff).

*Robert L. Marconi*, assistant attorney general, with whom, on the brief, were *William Tong*, attorney gen-

* September 28, 2021, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

Not Another Power Plant *v.* Connecticut Siting Council

eral, and *Clare E. Kindall*, solicitor general, for the appellee (named defendant).

*Linda L. Morkan*, with whom were *Kenneth C. Baldwin*, *James P. Ray* and, on the brief, *Emilee Mooney Scott*, for the appellee (defendant NTE Connecticut, LLC).

*Opinion*

ROBINSON, C. J. The principal issue in this appeal is whether the named defendant, the Connecticut Siting Council (council), properly refused to consider the environmental impact of installing a gas pipeline to a proposed electric generating facility when weighing the public benefit of the facility against its probable environmental impact pursuant to the Public Utility Environmental Standards Act (act), General Statutes § 16-50g et seq. The defendant NTE Connecticut, LLC (NTE), submitted an application to the council seeking a certificate of environmental compatibility and public need for the construction of an electric generating facility (facility) in the town of Killingly (town) pursuant to the act. Thereafter, the plaintiff, Not Another Power Plant, a nonprofit association formed to promote environmental conservation in the town, intervened in the proceeding pursuant to General Statutes § 22a-19 (a) (1).[1] After conducting hearings, the council issued a decision approving NTE's application. The plaintiff then appealed from the council's decision to the trial court, claiming

[1] General Statutes § 22a-19 (a) (1) provides: "In any administrative, licensing or other proceeding, and in any judicial review thereof made available by law, the Attorney General, any political subdivision of the state, any instrumentality or agency of the state or of a political subdivision thereof, any person, partnership, corporation, association, organization or other legal entity may intervene as a party on the filing of a verified pleading asserting that the proceeding or action for judicial review involves conduct which has, or which is reasonably likely to have, the effect of unreasonably polluting, impairing or destroying the public trust in the air, water or other natural resources of the state."

Not Another Power Plant *v.* Connecticut Siting Council

that, when weighing the public benefit of the facility against the harm that it would cause to the environment, the council improperly had failed to consider the environmental impact of a gas pipeline that would have to be installed in the future to provide fuel to the facility. The trial court concluded that the council was not required to consider the impact of the gas pipeline and rendered judgment dismissing the plaintiff's administrative appeal. On appeal to this court,[2] the plaintiff claims that the council's refusal to consider the environmental impact of the future gas pipeline was arbitrary and capricious. In response, the defendants disagree and also challenge the plaintiff's standing to bring this administrative appeal. Although we conclude that the plaintiff had standing, we also conclude that the trial court properly dismissed the plaintiff's administrative appeal. Accordingly, we affirm the judgment of the trial court.

The record reveals the following facts, which were found by the council and the trial court or are undisputed, and procedural history. On August 17, 2016, NTE filed with the council an application for a certificate of environmental compatibility and public need (certificate) pursuant to General Statutes § 16-50k (a).[3] NTE explained in the application that "[n]atural gas will be provided [to the facility] through a firm natural gas fuel supply contract . . . ." The natural gas would be supplied through an upgraded gas pipeline to be constructed and owned by Eversource Energy Service

---

[2] The plaintiff appealed to the Appellate Court, and we granted NTE's motion to transfer the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-2.

[3] General Statutes § 16-50k (a) provides in relevant part: "Except as provided in subsection (b) of section 16-50z, no person shall . . . commence the construction or supplying of a facility . . . that may, as determined by the council, have a substantial adverse environmental effect in the state without having first obtained a certificate of environmental compatibility and public need, hereinafter referred to as a 'certificate', issued with respect to such facility or modification by the council. . . ."

Not Another Power Plant *v.* Connecticut Siting Council

Company (Eversource). Eversource currently owns and operates an approximately fifty year old distribution gas pipeline that extends from a mainline located approximately two miles from the proposed facility site. Eversource would replace the distribution pipeline with a new pipeline with a diameter of at least fourteen inches. NTE further explained that it was seeking authorization to use ultra-low sulfur distillate as a fuel for the facility for up to 720 hours per year, although actual use was "expected to occur on the order of several hours once every two to three years and only under the circumstance where natural gas supply is not available."[4]

The plaintiff successfully sought permission to intervene in the proceeding pursuant to § 22a-19 (a) (1), claiming that approval of the facility would result in the unreasonable pollution and impairment of the public trust in the environment.[5] Thereafter, the plaintiff filed a motion for a stay and/or to dismiss the application, in which it claimed that the council was required to consider the environmental impact of the future gas pipeline when weighing the public benefit of the facility against the harm that it would cause to the environment, as required by General Statutes § 16-50p.[6] The plaintiff

_____

[4] The council initially denied NTE's application without prejudice on grounds unrelated to the plaintiff's claims. Thereafter, NTE filed a motion to open and modify the council's decision. The council granted the motion and recommenced the proceedings on NTE's application for a certificate. Consistent with the approach of the parties, we treat the proceedings on NTE's application before and after the council granted NTE's motion to open as a single, continuous proceeding.

[5] The Connecticut Fund for the Environment also intervened in the proceedings on NTE's application for a certificate pursuant to § 22a-19 (a) (1), but it is not a participant in this appeal.

[6] General Statutes § 16-50p provides in relevant part: "(a) (1) In a certification proceeding, the council shall render a decision upon the record either granting or denying the application as filed, or granting it upon such terms, conditions, limitations or modifications of the construction or operation of the facility as the council may deem appropriate.

"(2) The council's decision shall be rendered in accordance with the following:

"(A) Not later than twelve months after the filing of an application for a facility described in subdivision (1) or (2) of subsection (a) of section 16-50i

Not Another Power Plant *v.* Connecticut Siting Council

pointed out in the motion that the new pipeline would cross or abut (1) large wetland areas, (2) open space and protected land held by the Wyndham Land Trust, (3) the Bafflin Sanctuary, which is owned by the Connecticut Audubon Society, and the Air Line State Park Trail, (4) a large, undeveloped parcel owned by the Pomfret Rod and Gun Club, and (5) the Quinebaug River. The plaintiff also pointed out that NTE had not obtained a firm commitment as to the design and con-

---

or subdivision (4) of said subsection (a) if the application was incorporated in an application concerning a facility described in subdivision (1) of said subsection (a); and

"(B) Not later than one hundred eighty days after the filing of an application for a facility described in subdivisions (3) to (6), inclusive, of subsection (a) of section 16-50i, provided the council may extend such period by not more than one hundred eighty days with the consent of the applicant.

"(3) The council shall file, with its order, an opinion stating in full its reasons for the decision. The council shall not grant a certificate, either as proposed or as modified by the council, unless it shall find and determine:

"(A) Except as provided in subsection (b) or (c) of this section, a public need for the facility and the basis of the need;

"(B) The nature of the probable environmental impact of the facility alone and cumulatively with other existing facilities, including a specification of every significant adverse effect, including, but not limited to, (i) electromagnetic fields that, whether alone or cumulatively with other effects, impact on, and conflict with the policies of the state concerning the natural environment, (ii) ecological balance, (iii) public health and safety, (iv) scenic, historic and recreational values, (v) agriculture, (vi) forests and parks, (vii) air and water purity, and (viii) fish, aquaculture and wildlife;

"(C) Why the adverse effects or conflicts referred to in subparagraph (B) of this subdivision are not sufficient reason to deny the application . . . .

\* \* \*

"(c) (1) The council shall not grant a certificate for a facility described in subdivision (3) of subsection (a) of section 16-50i [i.e., any electric generating or storage facility], either as proposed or as modified by the council, unless it finds and determines a public benefit for the facility and considers neighborhood concerns with respect to the factors set forth in subdivision (3) of subsection (a) of this section, including public safety.

\* \* \*

"(3) For purposes of this section, a public benefit exists when a facility is necessary for the reliability of the electric power supply of the state or for the development of a competitive market for electricity and a public need exists when a facility is necessary for the reliability of the electric power supply of the state. . . ."

Not Another Power Plant *v.* Connecticut Siting Council

struction of the new pipeline and had not fully assessed the environmental impact that it would have. Accordingly, the plaintiff contended that the council should dismiss NTE's application or stay proceedings on it until the council could consider Eversource's application with respect to the pipeline. The council denied the motion on the ground that "the application was deemed complete by the [c]ouncil on September 15, 2016, and the feasibility of the utility interconnections will be explored during the course of these proceedings."

During the hearings on NTE's application, counsel for the plaintiff asked counsel for NTE, Mark Mirabito, whether it was "fair to say that with respect to th[e] gas pipeline . . . there's no evidence in th[e] record before [the council] for [it] to determine what impacts . . . installation of this gas pipeline will have . . . on the wetlands, open space, state park and land trust lands and the Quinebaug River . . . ." Another attorney for NTE, Kenneth C. Baldwin, objected to the question on the ground that "the [c]ouncil has already determined that it will review those impacts at a future time in an application filed by the appropriate party, in this case, Yankee Gas."[7] The council's chairman, Robert Silvestri, stated, "that is correct." Counsel for the plaintiff then asked for clarification as to whether the council would be considering the environmental impact of the new pipeline. Counsel for the council, Melanie A. Bachman, stated that, "throughout the proceeding, [the council has] had discussions that the pipeline would be the subject of a petition from Yankee Gas if this application is approved. . . . However, [the council is] not even sure if [it is] going to approve the application, or [the council] may modify it. [It] may move it. [The council] may be taking components and [putting] them in differ-

[7] Eversource was formerly known as Yankee Gas Services Company, and the names "Eversource" and "Yankee Gas" were used interchangeably during the proceedings on NTE's application for a certificate.

Not Another Power Plant *v.* Connecticut Siting Council

ent areas. . . . So, it's all somewhat premature to discuss the actual route of the gas lateral . . . . So, although . . . you're not prohibited from asking questions about environmental impact . . . the understanding that we have . . . is that . . . those petitions would be filed by the entities over which they have contracts. But right now, it's a little premature not knowing whether [the council] may decide to modify the facility or approve it at all.''

The council found that the proposed facility was ''necessary for the reliability of the electric power supply of the state'' and, therefore, that it would be a public benefit. The council further concluded, without considering the potential environmental effects of the future gas pipeline, that the facility would not be ''in conflict with the policies of the state concerning the natural environment, ecological balance, public health and safety, scenic, historic, and recreational values, agriculture, forests and parks, air and water purity, and fish, aquaculture and wildlife, together with all other environmental concerns . . . .'' Finally, the council concluded that the adverse impacts of the proposed facility ''are not disproportionate either alone or cumulatively with other effects when compared to [the] public benefit, are not in conflict with [the] policies of the [s]tate concerning such effects, and are not sufficient reason to deny the application.'' Accordingly, it directed that a certificate be issued to NTE.

The plaintiff brought this administrative appeal from the council's decision to the trial court pursuant to General Statutes § 4-183. The plaintiff contended that the council had improperly segmented ''the project''— namely, the electric generating facility together with the gas pipeline that would be required to provide fuel to the facility—into separate projects to avoid a comprehensive review of its overall environmental impact. NTE denied the plaintiff's substantive claims and raised the

special defense that the plaintiff lacked standing to bring the administrative appeal. Specifically, NTE contended that, because the council's decision was related only to the electric generating facility, and because the plaintiff made no claim that the construction and operation of *that facility*, standing alone, would cause harm to the environment, the plaintiff lacked statutory standing under § 22a-19 (a) (1). The council also denied the plaintiff's substantive claims.

The trial court rejected NTE's claim that the plaintiff lacked standing, concluding that, because the plaintiff contended that the council should have considered the electric generating facility and gas pipeline as one project, and because it alleged that the gas pipeline was reasonably likely to have the effect of unreasonably polluting, impairing or destroying the public trust in the natural resources of the state, its claims were sufficient to establish statutory standing under § 22a-19 (a) (1). Addressing the merits of the plaintiff's claim that the council had improperly segmented the project, the trial court concluded that "[t]he power plant and the theoretical future pipeline are different 'facilities' as defined in the statute, [they] are to be considered under different statutory provisions, and [they] are to be submitted to the council by two unrelated parties. Accordingly, the council . . . reasonably decided to consider them separately."

The trial court acknowledged that the electric generating facility was "intertwined with some form of an upgraded Eversource natural gas pipeline because the facility cannot function as planned and as approved without some form of an upgraded pipeline." The court also concluded, however, that the plaintiff had "not pointed to any [environmental] concerns with the facility itself, [or] any concerns that arise from the combination of the facility with the upgraded pipeline . . . ." The court further observed that the "upgraded pipeline

Not Another Power Plant *v.* Connecticut Siting Council

will need a certificate from the council, so there is no doubt that the council will consider the impacts from any pipeline upgrade, and the council has explicitly stated that [it] will consider the upgraded pipeline when it is presented to it by Eversource.'' Finally, the trial court noted that, if the council did not approve the upgraded pipeline, NTE would have to post a decommissioning bond and to develop a decommissioning plan for restoring the site of the facility, and the risk and cost of the failure to obtain approval of the gas pipeline would be borne solely by NTE. Accordingly, the court rejected the plaintiff's contention that ''improper segmentation'' had occurred. Having concluded that the plaintiff failed to establish that the council had improperly approved NTE's application for a certificate, the court rendered judgment dismissing the plaintiff's administrative appeal. This appeal followed.

On appeal, the plaintiff claims that the trial court incorrectly determined that the council was not required to consider the environmental impact of the future gas pipeline when weighing the public benefit of the electric generating facility against the harm that it would cause to the environment. The plaintiff points out that, without the gas pipeline, the facility will effectively be inoperable and, therefore, will have no public benefit. It is therefore clear, the plaintiff contends, that the council must have considered the public benefit of the facility and the pipeline together. To this end, the plaintiff additionally contends that the trial court incorrectly concluded that the environmental impact of the gas pipeline necessarily will be taken into account at some future point because Eversource will be required to apply to the council for a separate certificate before it can install the pipeline. The plaintiff points out that Eversource could request a declaratory ruling from the council that the pipeline would not have a substantial adverse environmental effect, in which case no certificate would be

required. See General Statutes § 16-50k (a). Accordingly, the plaintiff claims that the council also should have considered the environmental impact of the facility and the pipeline together when weighing the public benefit against the harm to the environment and that its refusal to do so was arbitrary and capricious.

In response, the council contends that the plaintiff waived any claim that the council improperly found that the electric generating facility would provide a public benefit by failing to claim in the trial court that the council had improperly balanced the public benefit of the electric generating facility against the harm to the environment. The council also claims that, even if this claim was not waived, it is meritless and that the trial court correctly determined that the council had not improperly segmented the project. With respect to the plaintiff's claim that the trial court incorrectly determined that Eversource will be required to apply for a certificate for the gas pipeline, the council contends that, even if that is the case, the environmental impact of the pipeline would necessarily be considered in any proceeding on a request for a declaratory ruling, and, therefore, any error was harmless. Finally, as an alternative ground for affirming the judgment of the trial court, the council raises the claim that the plaintiff lacked standing to appeal from the council's decision because it failed to allege that the decision would result in the impairment or destruction of the environment.

For its part, NTE claims that the council correctly determined that the act does not authorize the council to consider the environmental impact of future facilities, such as the gas pipeline, that have not yet been proposed or approved. Somewhat inconsistently, NTE also contends that the decision whether to consider the environmental impact of the gas pipeline was discretionary and that the council did not abuse its discretion when it declined to consider it. With respect to the

Not Another Power Plant *v.* Connecticut Siting Council

plaintiff's second claim, NTE contends that the plaintiff did not properly preserve for review the issue of whether NTE will be required to apply for a certificate because it never raised the claim before the council or in the trial court. It further contends that the trial court did not assume that NTE would have to apply for a certificate, but assumed only that the environmental impact of the gas pipeline would have to be considered in some forum. Finally, NTE joins the council in claiming, as an alternative ground for affirmance, that the plaintiff lacked standing to appeal to the Superior Court.

I

Because it implicates the trial court's subject matter jurisdiction, we first address the defendants' claim that the plaintiff lacked standing to appeal from the council's decision because it made no colorable claim that the decision would result in the impairment or destruction of the environment. We disagree.

We begin with the standard of review. "[I]n ruling on a motion to dismiss, the trial court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.) *Fort Trumbull Conservancy, LLC* v. *New London*, 265 Conn. 423, 432–33, 829 A.2d 801 (2003). "Because a determination regarding the trial court's subject matter jurisdiction raises a question of law, our review is plenary." (Internal quotation marks omitted.) *Financial Consulting, LLC* v. *Commissioner of Ins.*, 315 Conn. 196, 226, 105 A.3d 210 (2014).

"This court repeatedly has held that a person who intervenes in an administrative proceeding pursuant to § 22a-19, and who is aggrieved by the agency's decision, is entitled to appeal from that decision pursuant to the statutory provisions governing appeals from the

Not Another Power Plant *v.* Connecticut Siting Council

decisions of that particular agency." *Finley* v. *Inland Wetlands Commission*, 289 Conn. 12, 25–26, 959 A.2d 569 (2008). "An intervenor pursuant to § 22a-19 has standing to bring an appeal from an agency's decision only to protect the natural resources of the state from pollution or destruction." (Internal quotation marks omitted.) Id., 34. "Although a plaintiff seeking to assert a claim under § [22a-19] need not prove [its] case in order to survive a motion to dismiss, [it] nevertheless must articulate a colorable claim of unreasonable pollution, impairment or destruction of the environment." (Internal quotation marks omitted.) *Windels* v. *Environmental Protection Commission*, 284 Conn. 268, 289–90, 933 A.2d 256 (2007). "A complaint does not sufficiently allege standing . . . by merely reciting the provisions of § [22a-19], but must set forth facts to support an inference that unreasonable pollution, impairment or destruction of a natural resource will probably result from the challenged activities unless remedial measures are taken." (Internal quotation marks omitted.) *Finley* v. *Inland Wetlands Commission*, supra, 35.

In the present case, the plaintiff alleged in its complaint that the council had impermissibly segmented the project into two separate projects, namely, the electric generating facility and the gas pipeline, "in order to avoid a comprehensive review of [the] facility . . . ." The plaintiff further alleged that "[s]egmentation is to be avoided in order to ensure that interrelated projects, the overall effect of which is environmentally significant, not be fractionalized into smaller, less significant actions." Read in the light most favorable to the pleader, these allegations necessarily imply that the reason that segmentation is problematic is that it is more likely that an agency conducting an environmental impact review will approve each separate segment of a project than if the agency considered the project as a whole. In turn, this necessarily implies that segmentation could result

Not Another Power Plant *v.* Connecticut Siting Council

in an overall adverse impact on the environment that the agency might well have found to be unreasonable if it had considered the overall impact. Put differently, the improper segmentation of the project by the council would result in a substantial likelihood of the unreasonable impairment or destruction of the environment. We conclude, therefore, that the trial court correctly determined that the plaintiff had standing to bring this appeal.

II

We next address the plaintiff's claim that the trial court incorrectly determined that the council's refusal to consider the environmental impact of the future gas pipeline when weighing the public benefit of the electric generating facility against the harm that it would cause to the environment was not arbitrary and capricious. We disagree.

A

As a preliminary matter, we address the council's contention that the plaintiff waived this claim by failing to raise it in the trial court. Specifically, the council contends that the plaintiff never challenged the council's finding that the facility would provide a public benefit in the trial court but claimed only that the council should have considered the environmental impact of the future gas pipeline. The *very reason* that the plaintiff contended that the council was required to consider the impact of the pipeline, however, was that, if it had done so, it might have concluded that the adverse environmental impact of the facility and the pipeline, considered as a whole, outweighed the public benefit. Indeed, the plaintiff expressly made this argument to the trial court when counsel for the plaintiff stated that, although she had "every reason to believe that [the council] will do a thorough job evaluating what the environmental impacts are of the pipeline [during

Not Another Power Plant *v.* Connecticut Siting Council

future proceedings before the council] . . . what the
. . . council actually does is a balancing test.'' Counsel
for the plaintiff further argued that this balancing test
was ''the essence of what [the defendants are] trying
to avoid by segmenting the project . . . .'' Specifically,
she argued that, because the council assumed that the
pipeline would provide a great public benefit by render-
ing the electric generating facility operable but did not
consider the pipeline's potentially severe environmental
impact, ''the balancing might [well] be off . . . .'' In
other words, if the council had declined to presume
that the pipeline would provide a public benefit by
rendering the electric generating facility operable, it
could well have found that the public benefit provided
by the electric generating facility was speculative. We
conclude, therefore, that the plaintiff did not waive
this claim.

B

We turn therefore to the merits of the plaintiff's claim
that the council had the statutory authority to consider
the environmental impact of the future gas pipeline
when considering NTE's application for a certificate
for the electric generating facility and that its refusal
to do so was arbitrary and capricious. We begin our
analysis with the standard of review. ''Neither this court
nor the trial court may retry the case or substitute its
own judgment for that of the administrative agency on
the weight of the evidence or questions of fact.'' (Inter-
nal quotation marks omitted.) *Cadlerock Properties
Joint Venture, L.P.* v. *Commissioner of Environmental
Protection*, 253 Conn. 661, 676, 757 A.2d 1 (2000), cert.
denied, 531 U.S. 1148, 121 S. Ct. 1089, 148 L. Ed. 2d
963 (2001). ''The court shall affirm the decision of the
agency unless the court finds that substantial rights of
the person appealing have been prejudiced because
the administrative findings, inferences, conclusions, or
decisions are . . . arbitrary or capricious or character-

ized by abuse of discretion or clearly unwarranted exercise of discretion.'' General Statutes § 4-183 (j) (6).

Moreover, ''courts should accord deference to an agency's formally articulated interpretation of a statute when that interpretation is both time-tested and reasonable.'' *Longley* v. *State Employees Retirement Commission*, 284 Conn. 149, 166, 931 A.2d 890 (2007). Because the council's position that the act prohibits it from considering facilities, such as the gas pipeline, that are not currently existing when determining ''[t]he nature of the probable environmental impact of the facility alone and cumulatively with other existing facilities'' pursuant to § 16-50p (a) (3) (B) is not time-tested, our review is de novo. See, e.g., *Woodrow Wilson of Middletown, LLC* v. *Connecticut Housing Finance Authority*, 294 Conn. 639, 644, 986 A.2d 271 (2010).

''When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation

and [common-law] principles governing the same general subject matter . . . .'' (Citation omitted; internal quotation marks omitted.) Id., 644–45.

Accordingly, we turn to the language of the applicable statutes. Section 16-50p (a) (3) provides in relevant part: ''The council shall file, with its order, an opinion stating in full its reasons for the decision. The council shall not grant a certificate, either as proposed or as modified by the council, unless it shall find and determine . . . (B) *The nature of the probable environmental impact of the facility alone and cumulatively with other existing facilities*, including a specification of every significant adverse effect . . . that, whether alone or cumulatively with other effects, impact[s] on, and conflict[s] with the policies of the state concerning the natural environment . . . (C) Why the adverse effects or conflicts referred to in subparagraph (B) of this subdivision are not sufficient reason to deny the application . . . .'' (Emphasis added.) Section 16-50p (c) (1) provides: ''The council shall not grant a certificate for a facility described in subdivision (3) of subsection (a) of section 16-50i, either as proposed or as modified by the council, unless it finds and determines a public benefit for the facility and considers neighborhood concerns with respect to the factors set forth in subdivision (3) of subsection (a) of this section, including public safety.'' Section 16-50p (c) (3) provides: ''For purposes of this section, a public benefit exists when a facility is necessary for the reliability of the electric power supply of the state or for the development of a competitive market for electricity and a public need exists when a facility is necessary for the reliability of the electric power supply of the state.'' ''Facility'' is defined by the act to include ''a fuel transmission facility''; General Statutes § 16-50i (a) (2); and ''any electric generating . . . facility . . . .'' General Statutes § 16-50i (a) (3).

Not Another Power Plant *v.* Connecticut Siting Council

As we have indicated, NTE claims that these provision do not authorize the council to consider the potential environmental impact of a future project—in this case, the pipeline—when balancing the public benefit of a proposed facility against its adverse impact on the environment. Specifically, it contends that, because § 16-50p (a) (3) (B) expressly refers to "the probable environmental impact of *the facility alone* and cumulatively with other *existing facilities*"; (emphasis added); and because § 16-50i (a) defines electric generating facilities and fuel transmission lines as separate facilities, notwithstanding the fact that a particular fuel may be required to render a particular facility operable, the statutes clearly and unambiguously allowed the council to consider *only* the environmental impact of the facility together with the impact other *existing* facilities, and not the impact of a nonexistent fuel transmission line.

We conclude that these statutes did not prohibit the council from considering the potential impact of the gas pipeline in the proceedings on NTE's application for a certificate for the electricity generating facility. Section 16-50p (a) (3) (B) imposes an obligation on the council to "file . . . an opinion *stating in full* its reasons for the decision" that it has issued, in which it must "*find and determine* . . . [t]he nature of the probable environmental impact of the facility alone and cumulatively with other existing facilities . . . ." (Emphasis added.) Thus, the statute specifies the environmental factors that the council *must* consider and that it *must* expressly address in its written decision. The obvious intent of these provisions is to ensure that the council makes fully informed decisions and that it diligently carries out, and is clearly seen to carry out, its statutory duty "to protect the environment and ecology of the state and to minimize damage to scenic, historic, and recreational values" to the extent reasonably possible, consistent with the state's need for "adequate and reli-

able public utility services at the lowest reasonable cost to consumers . . . .'' General Statutes § 16-50g. These provisions also ensure that there is an adequate record for judicial review of the council's decisions. Contrary to NTE's claim, the statute does not specify matters that the council *may not* consider when balancing the public benefit of the proposed facility against the harm that it will cause to the environment. Indeed, we can perceive no reason why the legislature would have wanted to prohibit the council from considering *any* information that would be relevant to this balancing process.

We recognize that, as a purely practical matter, the council cannot consider the *actual* environmental impact of a future project, the nature and scope of which is indeterminate and that has not yet even been proposed. That does not mean, however, that the council is required to ignore the fact that a proposed facility will depend on the future existence of another facility that may well have a significant adverse effect on the environment.[8] Cf. *Delaware Riverkeeper Network* v. *Federal Energy Regulatory Commission*, 753 F.3d 1304, 1310 (D.C. Cir. 2014) (''an agency need not foresee the unforeseeable, but . . . [r]easonable forecasting and speculation [are] . . . implicit in [the National Environmental Policy Act (NEPA)], and we must reject any attempt by agencies to shirk their responsibilities under NEPA by labeling any and all discussion of future environmental effects as crystal ball inquiry'' (internal quotation marks omitted)). Indeed, we see nothing in

_____

[8] In this regard, we emphasize that we conclude only that, when determining whether the facility under review will have a public benefit, the council is authorized to consider the facts that (1) the facility is interdependent with another facility that does not yet exist, and (2) there is a significant likelihood that the nonexistent facility ultimately may not be approved because the harmful effects of that facility, considered together with the harmful effects of the facility under review, could outweigh the public benefit of the facilities considered as a whole.

Not Another Power Plant *v.* Connecticut Siting Council

the act that would preclude the council from concluding under such circumstances that, for example, the public benefit of the proposed facility is entirely speculative because there is a significant likelihood that the second, future facility will not be approved, and then either (1) staying the proceedings on the application for a certificate pending approval of the second facility,[9] (2) conditioning the approval of the facility under review on approval of the second facility; see General Statutes § 16-50p (a) (1) and (b) (2) (authorizing council to impose conditions on approval); or (3) denying the application for a certificate without prejudice to resubmitting it when the second facility has been approved.[10]

This conclusion finds support in federal case law addressing the problem of "segmentation." In *Stewart Park & Reserve Coalition, Inc.* v. *Slater*, 352 F.3d 545, 559–60 (2d Cir. 2003), the plaintiff claimed that the defendants had improperly attempted to circumvent NEPA by engaging in segmentation, that is, by breaking the proposed construction project into smaller projects and failing to consider the overall impact of the entire project. The United States Court of Appeals for the Second Circuit recognized that "[s]egmentation is to be

[9] The council's attorney stated at oral argument before this court that the council has no authority to defer making a decision on an application for a certificate until proceedings on an interdependent project are completed. The council did not dispose of the plaintiff's motion for a stay and/or to dismiss NTE's application pending review of the gas pipeline on the ground that it had no authority to issue a stay, however, but denied the motion on its merits.

[10] We recognize that, if an application for a facility is not approved because the council has some doubt that the related second facility will be approved, that same problem may arise in the proceedings on the application for a certificate for the second facility, that is, the public benefit of the second facility might be speculative because the first facility has not been approved. Thus, it would appear that joint proceedings on interdependent facilities would be the preferred procedure. Because it is not before us in this appeal, we leave consideration of this procedural matter to the discretion of the council in the first instance.

avoided in order to [e]nsure that interrelated projects, the overall effect of which is environmentally significant, not be fractionalized into smaller, less significant actions.'' (Internal quotation marks omitted.) Id., 559. ''A project is properly segmented if it (1) connects logical termini and is of sufficient length to address environmental matters of a broad scope; (2) has independent utility or independent significance; and (3) will not restrict consideration of alternatives for other reasonably foreseeable transportation improvements.'' Id. ''A project has been improperly segmented, on the other hand, if the segmented project has no independent utility, no life of its own, or is simply illogical when viewed in isolation.'' Id. Similarly, the court in *Delaware Riverkeeper Network* v. *Federal Energy Regulatory Commission*, supra, 753 F.3d 1304, recognized that ''[a]n agency impermissibly segments NEPA review when it divides connected, cumulative, or similar federal actions into separate projects and thereby fails to address the true scope and impact of the activities that should be under consideration. The [United States] Supreme Court has held that, under NEPA, proposals for . . . actions that will have cumulative or synergistic environmental impact [on] a region . . . pending concurrently before an agency . . . must be considered together. Only through comprehensive consideration of pending proposals can the agency evaluate different courses of action.''[11] (Internal quotation marks

---

[11] NTE contends that the plaintiff ''offers this court no basis on which it could unilaterally adopt [the federal case law disfavoring segmentation] based on the language and construct of [the act].'' NTE further contends that the act bars the application ''of this extratextual doctrine.'' We recognize that, unlike the act, federal law *requires* an agency conducting an environmental review pursuant to NEPA to consider ''both 'connected actions' and 'similar actions.' [40 C.F.R. § 1508.25 (a) (1) and (3) (2014)]. Actions are 'connected' if they trigger other actions, cannot proceed without previous or simultaneous actions, or are 'interdependent parts of a larger action and depend on the larger action for their justification.' [Id., § 1508.25 (a) (1)]. And actions are 'similar' if, 'when viewed with other reasonably foreseeable or proposed agency actions, [they] have similarities that provide a basis for

Not Another Power Plant *v.* Connecticut Siting Council

omitted.) Id., 1313, quoting *Kleppe* v. *Sierra Club*, 427 U.S. 390, 410, 96 S. Ct. 2718, 49 L. Ed. 2d 576 (1976).

We recognize that, as the defendants in the present case contend and as we have already suggested, the specific rule of *Stewart Park & Reserve Coalition, Inc.* v. *Slater*, supra, 352 F.3d 559, namely, that agencies must consider the actual environmental impact of interdependent projects, cannot apply when the facility under review will be interdependent with a nonexistent facility, the scope and nature of which is then unknown. We also recognize that these federal cases did not involve a situation in which the proposals for the interdependent projects will be submitted by different parties. Nevertheless, the general notion that the council should weigh the overall benefits that interdependent projects will provide to the public against their overall impact on the environment is simply a matter of common sense. As the plaintiff in the present case points out, if the environmental impact of a future facility that will be interdependent with the facility under review is entirely unknown, whether the public benefit of the facility under review outweighs its environmental impact must also be unknown. It is possible that the facility will have *no* public benefit because it is possible that the future facility will not be approved. Moreover, as we have also suggested, there are procedural mechanisms by which the council can overcome the difficul-

_____

evaluating their environmental consequences together, such as common timing or geography.' [Id., § 1508.25 (a) (3)]." *Delaware Riverkeeper Network* v. *Federal Energy Regulatory Commission*, supra, 753 F.3d 1309. We have already concluded, however, that there is no language in the act that *prohibits* the council from considering any relevant information when balancing the public benefit of a proposed project against the harm that it will cause to the environment. Although the existence of connected or similar facilities may not always be relevant to the council's statutorily mandated balancing process under the act, the fact that the facility under review will require the future installation of an interdependent facility may well be relevant because, if the future facility is *not* approved, the facility under review will provide *no* public benefit.

ties posed by the facts that the nature and scope of a future project is currently unknown and a different party will be seeking approval for the project.

In support of their argument that the act does not authorize the council to consider an interdependent facility that does not yet exist when balancing the public benefit that will be provided by a proposed facility against the harm that it will cause to the environment, the defendants cite two Superior Court cases, *New Haven* v. *Connecticut Siting Council*, Docket No. CV-02-0513195-S, 2002 WL 847970 (Conn. Super. April 9, 2002) (*New Haven I*), and *New Haven* v. *Connecticut Siting Council*, Superior Court, judicial district of New Britain, Docket No. CV-02-0513195-S (August 21, 2002) (33 Conn. L. Rptr. 187) (*New Haven II*). In *New Haven I*, the plaintiffs, the city of New Haven and the attorney general, sought a stay pending the trial court's ruling on their administrative appeal from the council's approval of the installation of an electric transmission cable under Long Island Sound. See *New Haven* v. *Connecticut Siting Council*, supra, 2002 WL 847970, *1. The plaintiffs contended that state environmental law, as well as NEPA, required the council to consider the cumulative impact of the cable and other cables when balancing its public benefit against the harm that it would cause to the environment. See id. The Superior Court noted that, under General Statutes (Rev. to 2001) § 16-50p (c) (2) (B), the council was required to consider " 'every single adverse and beneficial effect that, whether alone or cumulatively with other effects, conflict[s] with the policies of the state concerning the natural environment . . . .' " Id. The court concluded that the statute required the council to consider only the effects of the facility under review and not the effects of other, future facilities. Id., *2. The court further concluded that, even if the case law construing NEPA applied to the act, that case law "requires that an

Not Another Power Plant *v.* Connecticut Siting Council

entity filing an environmental impact statement address related proposals only when the project in question has no 'independent utility.' '' Id.

In *New Haven II*, the Superior Court's decision on the merits of the plaintiffs' appeal, the court addressed these claims again, and it again concluded that the controlling statutory provisions did not require the council to consider the environmental effects of other facilities that were planning to seek certificates. See *New Haven* v. *Connecticut Siting Council*, supra, 33 Conn. L. Rptr. 194. The court stated that "[i]t is entirely logical for an agency to consider only the environmental impact of the proposal before it, and then take that impact into account when evaluating subsequent proposals." Id. With respect to the plaintiffs' reliance on federal case law applying NEPA, the court concluded that General Statutes (Rev. to 2001) § 16-50g, which provided that one of the purposes of the act is to " 'provide environmental quality standards and criteria for the location, design, construction and operation of facilities for the furnishing of public utility services at least as stringent as the federal environmental quality standards and criteria,' '' does not make every regulation of the federal Council on Environmental Quality and the United States Environmental Protection Agency regarding federal environmental quality standards and criteria applicable to the council. Id., 196.

We conclude that these cases do not support the defendants' position. The court in *New Haven I* held only that, even assuming that federal case law applying NEPA applies to the act, it would not require the council to consider the environmental impact of future facilities when those facilities *are not interdependent* with the facility under review; see *New Haven* v. *Connecticut Siting Council*, supra, 2002 WL 847970, *2; a conclusion with which we entirely agree. We also agree with the court's conclusion in *New Haven II* that, if future facili-

Not Another Power Plant *v.* Connecticut Siting Council

ties are not interdependent with the facility under review, it would make sense for the council to consider the cumulative effects of the facilities when the future facilities submit applications for certificates. See *New Haven* v. *Connecticut Siting Council*, supra, 33 Conn. L. Rptr. 194. Finally, we agree with the Superior Court's statement that § 16-50g does not incorporate every regulation and procedural requirement of federal environmental law into the act. See id., 196. As we have already indicated, however, the federal case law addressing the segmentation of interdependent projects finds a basis not only in federal regulations but also in common-sense notions that are equally applicable to the interpretation and application of the state act. Accordingly, we conclude that the act did not prohibit the council from considering an interdependent facility that does not yet exist when balancing the public benefit that will be provided by a proposed facility against the harm that it will cause to the environment.

C

We now turn to the record in the present case to determine whether the trial court correctly determined that the council's refusal to consider the potential environmental impact of the gas pipeline during the proceedings on NTE's application for a certificate was not arbitrary and capricious. The trial court concluded that the electric generating facility and the gas pipeline were interdependent because the facility would not be able to operate as intended without the pipeline, and the defendants do not seriously challenge that conclusion on appeal. The trial court also concluded, however, that the council had not improperly segmented the project into two separate projects because (1) the plaintiff had not claimed that the combination of the electric generating facility with the gas pipeline would give rise to environmental concerns, (2) the council would consider the environmental impact of the gas pipeline in a future

Not Another Power Plant *v.* Connecticut Siting Council

proceeding, and (3) if the electric generating facility was unable to operate as intended, NTE would have posted a decommissioning bond and developed a decommissioning plan to restore the site of the facility, and the risk and cost of the failure to obtain approval for the gas pipeline would be borne solely by NTE, not by ratepayers.

We do not entirely agree with this analysis. Specifically, we do not agree with the trial court's conclusion that the plaintiff did not claim that combining the environmental impact of the electric generating facility with the impact of the gas pipeline would result in an increased environmental impact. Although the plaintiff made no claim that the combination would be synergistic, that is, that the facility and the pipeline together would produce an effect *greater* than the sum of their separate effects, it very clearly claimed that the sum of their effects would be greater than the effect of either project considered alone and that the cumulative effect should be weighed against the public benefit.

Nevertheless, we conclude that the trial court correctly determined that the council did not improperly segment the project because the environmental impact of the gas pipeline must be considered by the council in a future proceeding and because NTE alone would bear the cost and risk if the pipeline is not approved. As we discuss more fully in part III of this opinion, before it can grant a certificate to Eversource to install the gas pipeline, the council must find either that the pipeline will have no significant adverse environmental effect or that its impact, considered together with the impact of other existing facilities, is outweighed by the public benefit that it will provide. If the gas pipeline will have no significant impact, it follows that the cumulative impact of the facilities will not be significantly greater than the impact of the electric generating facility alone. If the pipeline will have a significant adverse

environmental effect, because the impact of the electric generating facility has already been determined, and because that impact would clearly be relevant, nothing would preclude the council from balancing the cumulative impacts of the two facilities against the public benefit that they would provide.[12] See General Statutes § 16-50p (a) (3) (B) (council must consider "[t]he nature of the probable environmental impact of the facility alone and cumulatively with other existing facilities").[13] If the council determines in that subsequent proceeding that the cumulative environmental impact outweighs the public benefit, the burden of decommissioning any portion of the electric generating facility that has already been built and restoring the site to its previous condition would be borne entirely by NTE. We conclude, therefore, that the trial court correctly determined that the council's refusal to consider the potential environmental impact of the gas pipeline during the proceedings on NTE's application for a certificate was not arbitrary and capricious.[14]

---

[12] As the trial court stated, we "must assume that the council and the Department of Energy and Environmental Protection [department] will properly perform their statutory functions when considering any future upgraded pipeline and will not be improperly pressured, as alleged by [the plaintiff], because of the council's prior issuance of the certificate for the [electric generating] facility." Any claim that the council and the department will be improperly influenced by the fact that NTE's application for a certificate was granted, in the subsequent proceedings on the gas pipeline, whatever form they may take, is not ripe for adjudication in this appeal.

[13] Although the parties do not address the issue, it seems clear that the term "existing facilities" was intended to include a facility for which a certificate has been issued, regardless of whether the facility has been fully constructed, if the existence of the facility would be relevant to the council's balancing procedure. Again, we can perceive no reason why the legislature would have wanted the council to ignore relevant information in making its determination.

[14] The concurring and dissenting opinion concludes that, because "the council reached a decision in this matter while laboring under the legally mistaken understanding that it could not exercise its discretion to deny or defer consideration of the pending application on the basis of the cumulative environmental impact of the electric generating facility and the future gas pipeline on which the operation of that facility will depend," a remand is

III

Finally, we address the plaintiff's claim that the trial court's conclusion that the defendants did not improperly segment the project was based on the incorrect assumption that Eversource would be required to apply for a certificate for the gas pipeline. NTE contends that this claim was waived because the plaintiff raised no claim in the trial court that Eversource could evade review by the council of the gas pipeline. We agree with NTE that the plaintiff failed to preserve for review any claim that Eversource could evade review by the council by seeking another agency's review. With respect to the plaintiff's claim that the trial court failed to recognize that Eversource could seek a declaratory ruling from the council that the gas pipeline would have no

necessary so that the council can properly exercise its discretion. We recognize that, ordinarily, an agency's failure to exercise its discretion because of a mistaken understanding of the law constitutes an abuse of discretion. Even if we were to assume, however, that the council believed that it was statutorily prohibited from considering the facts that the pipeline is an interdependent facility and that it has not yet been approved when weighing the public benefit of the electric generating facility against its environmental impact, we conclude that, under the specific circumstances of the present case, a remand is not necessary. As the matter now stands, the environmental impact of the electric generating facility must be considered during the certificate proceedings for the pipeline, unless Eversource files and the council grants a petition for a declaratory ruling that the pipeline will have no substantial adverse environmental effect. See part III of this opinion. If the pipeline ultimately is not approved and the electric generating plant cannot operate, NTE has posted a decommissioning bond to restore the site. If, as the concurring and dissenting opinion urges, the matter were remanded to the council for further proceedings, the council could stay the proceedings pending action on the pipeline, approve the certification conditioned on approval of the pipeline or deny the certificate without prejudice to reapplying if the pipeline is approved. In any case, the result would be the functional equivalent of the situation as it now stands: the cumulative environmental impact of the electric generating facility and the pipeline would be considered during the proceedings on the pipeline unless it were determined that the pipeline will have no substantial adverse environmental effect and, if the pipeline were not approved, NTE would be unable to complete the electric generating plant and the site would be restored.

substantial environmental impact instead of applying for a certificate, we conclude that any error was harmless.

We first address NTE's claim that the plaintiff waived this issue. The following additional procedural history is relevant to our resolution of this claim. The trial court and counsel for the plaintiff had the following exchange:

"The Court: [I]t seems, at least, from what your complaint says, that [the council is] going to consider whatever issues are associated with the pipeline when the application comes to [it]. So it doesn't seem like there's going to be anything missed. Explain to me why that's not right."

"[The Plaintiff's Counsel]: . . . I have every reason to believe that [the council] will do a thorough job evaluating what the environmental impacts are of the pipeline, but what the . . . council actually does is a balancing test. So [it does not] just look at environmental impacts. . . . [It's] not the Department of Environmental Protection. [The council is] not just concerned about that. [It's] also concerned about the benefit . . . to state residents, and [it has] to kind of do a balancing here. So . . . one of the problems with doing it in this order is [that the council is] going to say . . . there are going to be very significant environmental impacts . . . . [B]ut on the other side, if [the council] allow[s] this to go in, you have a very big benefit that there's going to be this operating national gas plant, and that's going to be great for the ratepayers . . . .

\* \* \*

"And so . . . that is . . . the essence of what [the defendants are] trying to avoid by segmenting the project . . . . [J]ust because we're not appealing environmental impacts does not mean there weren't environmental impacts from the power plant. . . . So there were those impacts plus the impacts from the

Not Another Power Plant *v.* Connecticut Siting Council

pipeline that you're going to balance on the other side with the benefit to the state. And so, now, instead of having the whole picture . . . you're just looking at the pipeline where it looks like the upside might be really high . . . ."

Thus, the plaintiff made no claim to the trial court that Eversource could evade review by the council of the gas pipeline. To the contrary, counsel for the plaintiff stated that she had "every reason to believe that [the council] will do a thorough job evaluating what the environmental impacts are of the pipeline . . . ." She was concerned only that the council would not be evaluating the *cumulative* environmental impacts of the electric generating facility and the pipeline. We conclude, therefore, that, to the extent that the plaintiff claims on appeal that the trial court failed to recognize that Eversource could evade review by the council by seeking review of the pipeline by another state agency, such as the Department of Energy and Environmental Protection (department), or the Federal Energy Regulatory Commission (commission), any such claim was not preserved for review. See, e.g., *Crawford v. Commissioner of Correction*, 294 Conn. 165, 203, 982 A.2d 620 (2009) (this court "will not review a claim unless it was distinctly raised at trial"); see also *State* v. *Cruz*, 269 Conn. 97, 105, 848 A.2d 445 (2004) ("a party who induces an error cannot be heard to later complain about that error").

We further note that, even if the issue had been preserved for review, the plaintiff has not explained how Eversource could evade review by the council by submitting a petition for a declaratory ruling to the department when § 16-50k expressly provides that the issue of whether the proposed facility will cause a substantial adverse environmental effect must be "determined by the *council* . . . ." (Emphasis added.) General Statutes § 16-50k (a). In addition, although the plaintiff points

out that the department submitted a document to the council during the proceedings on NTE's application for a certificate in which it inquired whether the council or the commission will have jurisdiction over the gas pipeline, and although the council would not have jurisdiction over the facility if the commission had jurisdiction over it; see General Statutes § 16-50k (d) ("[t]his chapter shall not apply to any matter over which any agency . . . of the federal government has exclusive jurisdiction, or has jurisdiction concurrent with that of the state and has exercised such jurisdiction"); the plaintiff points to no evidence that would support a conclusion that the commission might have jurisdiction because the pipeline might cross state lines. To the contrary, although the parameters of the pipeline were not fully determined at the time of the proceedings on NTE's application, the council expressly found that the new pipeline would be installed adjacent to the existing pipeline, which does not cross state lines. The plaintiff also has made no claim that proceedings before the commission would be inadequate to protect the environmental interests that the act was intended to protect.

With respect to the plaintiff's claim that the trial court failed to recognize that, as the defendants concede, Eversource could seek a declaratory ruling from the council instead of seeking a certificate, we conclude that any error was harmless. Under § 16-50k (a), an entity that intends to construct a facility subject to the act is required to obtain a certificate only if the facility "may, as determined by the council, have a substantial adverse environmental effect in the state . . . ." An entity that believes that a facility will not have a substantial adverse environmental effect may file a petition for a declaratory ruling to that effect with the council pursuant to General Statutes § 4-176 (a)[15] and § 16-50j-39

---

[15] General Statutes § 4-176 (a) provides: "Any person may petition an agency, or an agency may on its own motion initiate a proceeding, for a declaratory ruling as to the validity of any regulation, or the applicability

Not Another Power Plant *v.* Connecticut Siting Council

(a) of the Regulations of Connecticut State Agencies.[16] Pursuant to § 16-50j-40 (b) of the regulations,[17] the council is not required to conduct a hearing on the petition but may do so if it deems a hearing necessary or helpful. Pursuant to § 16-50j-40 (c)[18] of the regulations, the council may issue a decision within sixty days after receiving the petition or it may decide not to issue a decision, stating the reasons for its action.

The plaintiff in the present case contends that the trial court's assumption that Eversource would be

to specified circumstances of a provision of the general statutes, a regulation, or a final decision on a matter within the jurisdiction of the agency.''

[16] Section 16-50j-39 (a) of the Regulations of Connecticut State Agencies provides: ''Any interested person may at any time request a declaratory ruling of the Council with respect to the applicability to such person of any statute, or the validity or applicability of any regulation, final decision, or order enforced, administered, or promulgated by the Council. Such request shall be addressed to the Council and sent to the principal office of the Council by mail or delivered in person during normal business hours. The request shall state clearly and concisely the substance and nature of the request; it shall identify the statute, regulation, final decision, or order concerning which the inquiry is made and shall identify the particular aspect to which the inquiry is directed. The request for a declaratory ruling shall be accompanied by a statement of any data, facts, and arguments that support the position of the person making the inquiry. Where applicable, Sections 16-50j-13 to 16-50j-17, inclusive, of the Regulations of Connecticut State Agencies govern requests for participation in the proceeding.''

[17] Section 16-50j-40 (b) of the Regulations of Connecticut State Agencies provides: ''If the Council deems a hearing necessary or helpful in determining any issue concerning the request for a declaratory ruling, the Council shall schedule such hearing and give such notice thereof as shall be appropriate. The contested case provisions of Sections 16-50j-13 to 16-50j-34, inclusive, of the Regulations of Connecticut State Agencies shall govern the practice and procedure of the Council in any hearing concerning a declaratory ruling.''

[18] Section 16-50j-40 (c) of the Regulations of Connecticut State Agencies provides: ''Within 60 days after receipt of a petition for a declaratory ruling, the Council in writing shall: (1) issue a ruling declaring the validity of a regulation or the applicability of the provision of the Connecticut General Statutes, the regulation, or the final decision in question to the specified proceedings; (2) order the matter set for specified proceedings; (3) agree to issue a declaratory ruling by a specified date; (4) decide not to issue a declaratory ruling and initiate regulation-making proceedings, under Section 4-168 of the Connecticut General Statutes, on the subject; or (5) decide not to issue a declaratory ruling, stating the reasons for its action.''

required to submit an application for a certificate was harmful because applications for certificates and petitions for declaratory rulings "require vastly different levels of preparation and scrutiny." Specifically, it contends that, unlike an application for a certificate, a petition for a declaratory ruling does not trigger a requirement for a hearing, does not require the council to render a decision and does not expressly require the petitioner to submit specific detailed information about the proposed project. Cf. General Statutes § 16-50*l* (a) (1).[19]

---

[19] General Statutes § 16-50*l* (a) provides in relevant part: "To initiate a certification proceeding, an applicant for a certificate shall file with the council an application, in such form as the council may prescribe . . . . An application shall contain such information as the applicant may consider relevant and the council or any department or agency of the state exercising environmental controls may by regulation require, including the following information:

"(1) In the case of facilities described in subdivisions (1), (2) and (4) of subsection (a) of section 16-50i: (A) A description, including estimated costs, of the proposed transmission line, substation or switchyard, covering, where applicable underground cable sizes and specifications, overhead tower design and appearance and heights, if any, conductor sizes, and initial and ultimate voltages and capacities; (B) a statement and full explanation of why the proposed transmission line, substation or switchyard is necessary and how the facility conforms to a long-range plan for expansion of the electric power grid serving the state and interconnected utility systems, that will serve the public need for adequate, reliable and economic service; (C) a map of suitable scale of the proposed routing or site, showing details of the rights-of-way or site in the vicinity of settled areas, parks, recreational areas and scenic areas, residential areas, private or public schools, child care centers, as described in section 19a-77, group child care homes, as described in section 19a-77, family child care homes, as described in section 19a-77, licensed youth camps, and public playgrounds and showing existing transmission lines within one mile of the proposed route or site; (D) a justification for adoption of the route or site selected, including comparison with alternative routes or sites which are environmentally, technically and economically practical; (E) a description of the effect of the proposed transmission line, substation or switchyard on the environment, ecology, and scenic, historic and recreational values; (F) a justification for overhead portions, if any, including life-cycle cost studies comparing overhead alternatives with underground alternatives, and effects described in subparagraph (E) of this subdivision of undergrounding; (G) a schedule of dates showing the proposed program of right-of-way or property acquisition, construction,

Not Another Power Plant *v.* Connecticut Siting Council

We are not persuaded. We cannot conclude that the statutory and regulatory provisions governing petitions for a declaratory ruling from the council that a proposed facility will have no substantial adverse environmental effect for purposes of § 16-50k (a) are facially inadequate to ensure that the council will fully and fairly consider the issue, and any claim that the council will not do so in the present case is not yet ripe for review.[20] See footnote 12 of this opinion. If Eversource seeks a declaratory ruling and, after full and fair consideration of the issue, the council determines that the facility would have no substantial environmental effect, that would obviate the need for the procedural requirements applicable to an application for a certificate because the very purpose of those requirements is to allow the council to balance substantial harm to the environment against the public benefit provided by a facility. Accordingly, we conclude that any error by the trial court was harmless because there is no reasonable likelihood that the trial court would have reached a different conclusion if it had recognized that Eversource could file a petition for a declaratory ruling instead of an applica-

completion and operation; (H) an identification of each federal, state, regional, district and municipal agency with which proposed route or site reviews have been undertaken, including a copy of each written agency position on such route or site; and (I) an assessment of the impact of any electromagnetic fields to be produced by the proposed transmission line . . . .''

[20] To the extent that the plaintiff contends that the fairness of the council's ruling on a petition for a declaratory ruling might never be subject to review because it is possible that the plaintiff might not participate in the proceedings on any such petition, we conclude that the fact that the plaintiff might choose not to intervene in the proceedings does not render them inadequate. If the plaintiff is not permitted to intervene in any such proceedings, or if it intervenes and believes that the proceedings are unfair, it would be entitled to appeal. See *FairwindCT, Inc.* v. *Connecticut Siting Council*, 313 Conn. 669, 676, 714, 99 A.3d 1038 (2014) (plaintiff intervened in proceedings on petition for declaratory ruling pursuant to § 22a-19 (a) (1) and had standing to claim on appeal that council's procedures deprived it of common-law right to fundamental fairness).

798 JANUARY, 2022 340 Conn. 762

Not Another Power Plant *v.* Connecticut Siting Council

tion for a certificate. See *Manning* v. *Michael*, 188 Conn.
607, 611, 452 A.2d 1157 (1982) ("[t]he burden of proving
harmful error rests on the party asserting it . . . and
the ultimate question is whether the erroneous action
would likely affect the result" (citation omitted)).

The judgment is affirmed.

In this opinion McDONALD, MULLINS and KAHN,
Js., concurred.

McDONALD, J., concurring. Although I concur in the
result that the majority reaches and join in the court's
judgment, I am not persuaded by the majority's analysis
of the Public Utility Environmental Standards Act, Gen-
eral Statutes § 16-50g et seq., or its conclusion that the
act did not preclude the named defendant, the Connecti-
cut Siting Council, "from considering an interdependent
facility that *does not yet exist* when balancing the public
benefit that will be provided by a proposed facility
against the harm that it will cause to the environment."
(Emphasis added.) Part II B of the majority opinion.
In my view, that conclusion is inconsistent with the
command of General Statutes § 16-50p (a) (3), which
provides in relevant part: "The council shall file, with
its order, an opinion stating in full its reasons for the
decision. The council shall not grant a certificate, either
as proposed or as modified by the council, unless it
shall find and determine:

* * *

"(B) The nature of the probable environmental
impact of the facility *alone* and cumulatively with other
*existing facilities* . . . ." (Emphasis added.)

When the controlling statute explicitly provides that
the council can consider only the facility that is the
subject of the application before it alone and cumula-
tively with "other existing facilities," it is improper, in

Not Another Power Plant *v.* Connecticut Siting Council

my view, to go beyond that language and allow the council to consider nonexistent facilities that may or may not be the subject of future applications that would be submitted, if at all, by completely separate applicants. To do otherwise excises "existing" from the statute. Applications filed with the council are unusually technical and remarkably detailed, and the majority does not explain how the council should evaluate the probable environmental impacts of facilities for which it does not have that detailed information.

The legislature included the word "existing" in the statute for a reason, and the majority opinion undermines the legislature's choice by extending the authority of the council to permit consideration of nonexistent, hypothetical facilities when evaluating a proposed facility. To the extent that the plaintiff, Not Another Power Plant, has expressed concerns with segmentation of applications for interrelated facility projects, the resolution of those concerns are policy decisions for the legislature to make, not this court.

ECKER, J., with whom D'AURIA, J., joins, concurring in part and dissenting in part. I agree with parts I, II A, and II B of the majority opinion, in which the majority concludes that the plaintiff, Not Another Power Plant, has standing to bring this appeal and did not waive its claim that the trial court incorrectly determined that the refusal of the named defendant, the Connecticut Siting Council (council), to consider the environmental impact of the future gas pipeline was legally erroneous, and that the council proceeded under the legally erroneous belief that the relevant provisions of the Public Utility Environmental Standards Act (act), General Statutes § 16-50g et seq., precluded it from considering the environmental impact of the future gas pipeline when balancing the public benefit of the proposed electric generating facility against the harm that it will cause to the environment. Unlike the majority, however, I

Not Another Power Plant *v.* Connecticut Siting Council

believe that this latter holding requires us to reverse the judgment of the trial court and to remand the present case to that court with direction to remand it to the council to reconsider its approval of the application filed by the defendant NTE Connecticut, LLC (NTE), in light of its discretion to consider the potential environmental impact of the future gas pipeline. For that reason, I respectfully dissent in part.

The majority correctly observes that General Statutes § 4-183 (j) (6) requires a court to affirm an agency decision unless it finds " 'that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.' "[1] Part II B of the majority opinion. My agreement with the majority opinion, as I stated, also includes the conclusion that the council erroneously construed the act to prohibit it from considering the potential environmental impact of the gas pipeline in the underlying proceedings. That is, the council reached a decision in this matter while laboring under the legally mistaken understanding that it could not exercise its discretion to deny or defer consideration of the pending application on the basis of the cumulative environmental impact of the electric generating facility and the future gas pipeline on which the operation of that facility will depend. To the contrary, as the majority concludes, "the act did not prohibit the council from considering an interdependent facility that does not yet exist [namely, the pipeline] when balancing the public benefit that will be provided by a proposed facility against the harm that it will cause to the environment." Id.

---

[1] As the majority states, de novo review is appropriate here because the agency's interpretation of the relevant statutory provisions is not "time-tested . . . ." (Internal quotation marks omitted.) Part II B of the majority opinion.

Not Another Power Plant *v.* Connecticut Siting Council

My agreement with the majority ends there because, in my view, the council's "failure to exercise its discretion constituted an abuse of discretion." *State* v. *Martin*, 201 Conn. 74, 88, 513 A.2d 116 (1986); see also *Meadowbrook Center, Inc.* v. *Buchman*, 328 Conn. 586, 609, 181 A.3d 550 (2018) (remand for hearing was appropriate "because the trial court improperly failed to exercise its discretion" (internal quotation marks omitted)); *Costello* v. *Goldstein & Peck, P.C.*, 321 Conn. 244, 256, 137 A.3d 748 (2016) ("the court's failure to recognize its authority to act constituted an abuse of discretion"). When an administrative agency does not recognize or exercise its discretion due to a misinterpretation of a rule or statute, it abuses that discretion. In other words, an agency, "vested with discretion, abuses that discretion when it behaves as if it has no other choice than the one it has taken, or when it makes a decision for which there is not adequate support." *Bennington Housing Authority* v. *Bush*, 182 Vt. 133, 139, 933 A.2d 207 (2007); see also *Fisher* v. *Commissioner for Internal Revenue*, 45 F.3d 396, 397 (10th Cir. 1995) (tax commissioner "failed to demonstrate that she had exercised her discretion and thereby abused that discretion"); *United States ex rel. Adel* v. *Shaughnessy*, 183 F.2d 371, 372 (2d Cir. 1950) ("[t]he courts cannot review the exercise of such discretion; they can interfere only when there has been a clear abuse of discretion or a clear failure to exercise discretion" (footnote omitted)); *Litterer* v. *Judge*, 644 N.W.2d 357, 362 (Iowa 2002) ("an agency that has authority to act but fails to exercise that authority based [on] a false belief that there is no such authority abuses its discretion"); *Clark Fork Coalition* v. *Dept. of Environmental Quality*, 347 Mont. 197, 209, 197 P.3d 482 (2008) ("when an agency, because of a misinterpretation of its rule, does not exercise its discretion it abuses its discretion"); 3 H. Koch & R. Murphy, Administrative Law and Practice (3d Ed. 2021)

Not Another Power Plant *v.* Connecticut Siting Council

§ 9:27 [4] ("[f]ailure to exercise discretion might be an abuse of discretion"); 73A C.J.S. 322, Public Administrative Law and Procedure § 416 (2004) ("[a]n agency that has authority to act but fails to exercise that authority based upon a false belief that there is no such authority abuses its discretion").

The majority concludes that, notwithstanding the council's failure to exercise its discretion, the council did not arbitrarily and capriciously refuse to consider the potential environmental impact of the gas pipeline because that impact will be considered in a future proceeding at which "the council must find either that the pipeline will have no significant adverse environmental impact or that its impact, considered together with the impact of other existing facilities, is outweighed by the public benefit that it will provide." Part II C of the majority opinion. It is true that the council could have arrived at the very same result in the proper exercise of its discretion. But that is not the standard by which error is measured in this context. Although the council *could have* arrived at the same conclusion had it been aware of its discretionary authority, and nonetheless decided to defer consideration of the pipeline's environmental impact until a future proceeding on an application seeking a certificate for that pipeline, it *also* could have decided to consider the impact of the two interrelated projects in a single proceeding. That is the point. The council had the discretion to choose either course, but it was not aware of its discretion and erroneously believed that it had no choice.

We do not know what the council would have chosen to do if it had exercised its discretion, and we must remand the matter to the council so that it may decide whether to consider the environmental impact of the

Not Another Power Plant *v.* Connecticut Siting Council

future gas pipeline when weighing the public benefit of the proposed electric generating facility against its probable environmental impact under § 16-50g.[2] See *Miami Nation of Indians of Indiana, Inc.* v. *United States Dept. of the Interior*, 255 F.3d 342, 350 (7th Cir. 2001) (administrative agency's "[f]ailure to exercise discretion, however uncanalized that discretion, is an abuse of discretion," and "the remedy is to remand for the exercise of that discretion"), cert. denied sub nom.

---

[2] The majority acknowledges that, "ordinarily, an agency's failure to exercise its discretion because of a mistaken understanding of the law constitutes an abuse of discretion." Footnote 14 of the majority opinion. It concludes nevertheless that a remand is not required under the specific circumstances of the present case because "the result [of a remand] would be the functional equivalent of the situation as it now stands: the cumulative environmental impact of the electric generating facility and the pipeline would be considered during the proceedings on the pipeline unless it were determined that the pipeline will have no substantial adverse environmental effect and, if the pipeline were not approved, NTE would be unable to complete the electric generating plant and the site would be restored." Id. Perhaps, but perhaps not. As the majority observes, the council would have various options on remand, and its selection among those options (or its choice of some other option that we have not identified) may, as a practical or legal matter, significantly change "the situation as it now stands" in one way or another. Id. Timing and sequencing can matter a great deal in matters of regulatory approval. If that were not true, then the parties in the present case presumably would not have a dispute over the outcome of this appeal because it would make no difference to them whether the council's review of the cumulative environmental impact comes now or in a future proceeding. The bottom line is that the council, and not this court, possesses the information, the expertise, and the legal obligation to exercise its best judgment based on its own careful assessment of all of the pertinent considerations permitted by law—including, if it so chooses, the factor that the council mistakenly believed was off limits in the prior proceeding, namely, the environmental impact of the future gas pipeline. This court is ill-equipped to hypothesize what the council will do on remand or to speculate whether the consequences that flow from the agency's future determination, after remand, will be the "substantial equivalent" of the situation "as it now stands" pursuant to a legally erroneous prior decision. Id.; cf. *Commissioner of Emergency Services & Public Protection* v. *Freedom of Information Commission*, 330 Conn. 372, 379, 194 A.3d 759 (2018) ("Under the [Uniform Administrative Procedure Act], it is [not] the function . . . of this court to retry the case or to substitute its judgment for that of the administrative agency. . . . Even for conclusions of law, [t]he court's ultimate duty is

Not Another Power Plant *v.* Connecticut Siting Council

*Miami Nation of Indians of Indiana, Inc.* v. *Norton*, 534 U.S. 1129, 122 S. Ct. 1067, 151 L. Ed. 2d 970 (2002); *United States ex rel. Adel* v. *Shaughnessy*, supra, 183 F.2d 372 n.3 ("[i]n such a case, the court can do no more than to require that the discretion be exercised, one way or the other"); *Davenport* v. *Newcomb*, 820 N.W.2d 882, 892 (Iowa App. 2012) ("[w]hen there is error based on an agency's failure to exercise discretion, the remedy is to reverse and remand to the agency for consideration"). Accordingly, I would reverse the judgment of the trial court with direction to remand the case to the council for further proceedings consistent with this opinion.

––––––––––––––––––

only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion." (Internal quotation marks omitted.))